which the terminal mechanism could have been set adrift by the violence of the accident; that it must have been 'adrift' before the accident."

In view of this evidence it does not seem to us that it can be said as matter of law that the act of the plaintiff's intestate in starting the elevator directly contributed to the accident. If it were clear that the fall of the elevator was caused by the pulling of the rope off the operating sheave in the act of starting or operating the elevator, then it might be said that the operator directly contributed to the accident. But this terminal stop mechanism is said to be something out of repair, and something which was independent of and disconnected with the ordinary starting or stopping of the elevator by the operator. If this be true, and that is a question of fact, the act of starting or operating the elevator cannot be said to be the proximate cause of the accident.

The theory of the plaintiff thus was that the terminal stop mechanism was adrift before the accident, and that no force in operating the elevator could have been the direct cause of the accident, or could have set the terminal stop mechanism adrift. There was evidence tending to show that the injury resulted from the fact that the terminal stop mechanism was out of repair, and that such was an independent pre-existing condition. If this was so, the injured party's initiative illegal act was not the direct cause of the injury.

The judgment of the Circuit Court is reversed, the verdict is set aside, the case is remanded to that court for further proceedings not inconsistent with this opinion, and the plaintiff in error recovers his costs of appeal.

SAVAGE v. NEW YORK, N. & H. S. S. CO., Limited (two cases).

(Circuit Court of Appeals, Second Circuit. March 6, 1911).

Nos. 176, 177.

1. SHIPPING (§ 166*)—LIABILITIES OF OWNERS OF VESSELS—DEFECTIVE CONDITION OF VESSEL—EVIDENCE.

Where a structure on the promenade deck of a passenger vessel, consisting of a chain box extending on both port and starboard sides from deckhouse to rail, covering a necessary part of the steering gear, was common in vessels of the size and age of the vessel, and had long been well known on vessels used for passenger traffic, negligence of the owner could not be predicated on the construction of the vessel, though there was evidence that a sloping cover for the steering chain would have been less dangerous.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 166.*]

2. SHIPPING (§ 166*)—LIABILITIES OF OWNERS OF VESSELS—DEFECTIVE CONDITION OF VESSEL—EVIDENCE.

Where a passenger came on board during daylight, and went to her stateroom, a few feet from such an obstruction, and then left the stateroom, and went to the other side of the deck, near the corresponding obstruction, where she remained for some hours, the failure of the owner to warn the passenger of the obstruction was not actionable negligence, and it was not liable for injuries sustained by her by stumbling over the

obstruction near her stateroom before 8 p. m. of a clear, mild day, when the sun set at about 7:30 p. m.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 166.*]

**3. HUSBAND AND WIFE (§ 209*)—INJURIES TO WIFE—ACTION BY HUSBAND.**

Where a wife may not maintain libel for personal injuries, her husband may not maintain a libel for expenses on account of the wife's injuries and for the loss of consortium.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 768; Dec. Dig. § 209.*]

Appeals from the District Court of the United States for the Southern District of New York.

Libels by Ella D. Savage for personal injuries, and by her husband, Minot J. Savage, for expenses on account of her injuries and loss of consortium, against the New York, Newfoundland & Halifax Steamship Company. From decrees for defendants in each action, libelant in each action appeals. Affirmed.

The following is the opinion of Hough, District Judge:

On the 26th of June Mrs. Savage was a passenger on respondent's steamship Rosalind, bound from New York to Halifax. While the steamer was in Long Island Sound, during calm weather, she fell upon the promenade deck, breaking both bones of one leg and simultaneously dislocating her ankle. At the time Mrs. Savage was 64 years old, and, according to a physician who has testified in her behalf, in a neurasthenic condition. At the time and place of her fall, no one was in her immediate vicinity, and her efforts to obtain assistance were not immediately successful. To her (naturally) "it seemed a great while" before any one perceived her plight. She "should say" that she was "lying there five or ten minutes." The time was almost certainly much less than this; but there was an appreciable period between her fall and the time when any one but herself knew she had fallen.

The suffering naturally attendant upon such injuries as above noted was aggravated by the impossibility of simultaneously setting the broken bones and reducing the dislocation of the ankle without anæsthetics; and although she seems to have been attended by a remarkably competent physician and surgeon, who happened to be a passenger on the Rosalind, he was unable to obtain any anæsthetic on board the ship. In result the necessary surgical operation was delayed until arrival in Halifax. This delay, and the age and condition of the patient, produced a long convalescence and, according to the uncontradicted evidence, permanent disability.

Speaking untechnically, the cause of this lamentable accident was a chain box extending on both port and starboard sides from deckhouse to rail, covering a necessary portion of the steering gear. On each side of the promenade deck, therefore, these chain boxes formed an obstruction more than half a foot high and about a foot wide, and extending as above noted across the deck. The only door into Mrs. Savage's stateroom was within a few feet of the port chain box over which she fell. She had come on board during daylight, had gone to her stateroom, had come out therefrom, but had not noticed the chain box. She then went to the other side of the deck with her traveling companions, and there spent the rest of the afternoon, apparently not noticing the corresponding chain box on that side of the vessel, although she must have been sitting for hours within a few feet of it.

It may be noted that the principal libelant is a lady of intelligence, who has traveled much and is entirely accustomed to passenger life on steamers. After sunset of the day first mentioned (which was the day of the beginning of the voyage), the libelant rose from her chair on the starboard side of the deck, saying that she would go to the other side of the vessel to see the "afterglow." She passed from starboard to port aft of the deckhouse which contained her own stateroom, and in walking forward on that portion of the

promenade deck which exactly corresponded to the one she had just left she tripped and fell over the chain box, receiving injuries to recover for which this action is brought.

Much of the testimony adduced in the causes relates to the time when the injury was received. A number of passengers (who, of course, only knew of libelant's injuries after she had been discovered lying helpless on the deck) declare that it was dark. That is a matter of opinion as to which observers at the same instant of time might differ; but the following facts are shown by uncontradicted evidence: After Mrs. Savage was hurt, some period of time elapsed before she was discovered. Her injury was first made known to a passenger, who went in search of her daughter and son-in-law, who were traveling with her and had remained on the starboard side of the deck. After they had gone to Mrs. Savage's assistance, the fact that a passenger had been injured was reported on the bridge to the first officer, whose watch terminated at 8 p. m., and he noted in the scrap deck log that such report was made at 7:50 p. m.

It is, therefore, capable of demonstration that the libelant stumbled and fell over this deck obstruction considerably before 8 o'clock of a clear and mild day, when the sun set by almanac at 7:29, and by computation offered on behalf of the respondent at 7:32. It is in my opinion too plain for further discussion that on a clear day in June, in the latitude of New York City, on the sunny side of such an object as a house or deck saloon, a construction of the size of this chain box was plainly visible to any person of reasonably good vision and in the possession of his faculties. I am unable to conceive of anything more obvious than this chain box must have been to such a person.

[1] It is proven without contradiction that this particular structure or arrangement of steering gear is extremely common in vessels of the size and age of the Rosalind and has long been well known on vessels used for passenger traffic. Therefore no negligence as against the owners of the vessel can be predicated on the construction of the ship.

But it is said that inasmuch as the promenade deck is given over to the use of passengers, and the structure in question is one over which people may fall, peculiar care is necessary in guarding or warning passengers exposed to this possible injury. [2] This may be true; but it is not necessary to dwell upon it in this case, because of the finding heretofore made that during all the time that Mrs. Savage was on board the Rosalind until the time of her accident the obstruction was obvious, and that which is obvious to one of ordinary intelligence and in the possession of physical senses does not require special warning.

I am, therefore, of opinion that no negligence is shown on the part of the owners of the ship, and that, whatever may be the duty of the managers of such ship in respect of such an obstruction after nightfall or during stormy weather, there was nothing in the conditions existing at the time of the accident to require any precautions to be taken in the premises. Unless negligence in the respondent be shown there can be no recovery here; but it may be noted that under circumstances no more extreme than are shown in this case either the claimant or defendant has been exonerated from negligence or active lack of care found to exist in libelant or plaintiff. Elder Dempster Shipping Company v. Pouppirt, 125 Fed. 736, 60 C. C. A. 500; The Anchoria (D. C.) 77 Fed. 994; The Southside (D. C.) 155 Fed. 364.

In common-law courts the following cases seem to me relevant: Strutt v. Brooklyn, etc., Ry. Co., 18 App. Div. 134, 45 N. Y. Supp. 728 (where a passenger stumbled over a hose lying across a wharf while en route to board a steamer); Fogassi v. New York, etc., Railroad Company, 17 App. Div. 286, 45 N. Y. Supp. 175 (where a passenger went with a crowd over an unguarded gangplank leading from a ferryboat to the wharf during the night); Race v. Union Ferry Company, 138 N. Y. 644, 34 N. E. 280 (holding that a ferry company is entitled to assume that passengers will take some care of themselves, and such carrier need only use such care and skill as will make the entrance to its boats safe for persons of ordinary prudence).

Much testimony has been taken to show that a sloping cover for the stearing chains would have been less dangerous; but it is not enough to make out a case of negligence to suggest that additional precautions would have pre-

vented the accident. Loftus v. Union Ferry Company, 22 Hun, 33, affirmed 84 N. Y. 455, 38 Am. Rep. 533.

[3] These considerations require the dismissal of Mrs. Savage's libel, and if that falls the libel of Dr. Savage falls also.

It is not, however, to be understood that any opinion is thereby to be inferred as to the existence of jurisdiction in such a libel as that of Dr. Savage. No instance of what is in substance an action per quod consortium amisit has been shown in admiralty. The nearest approach that I know of is Moses v. Hamburg Packet Company (D. C.) 88 Fed. 329, where a recovery was had by a father for the loss of services of his son, who had been injured on shipboard. The son also had brought his libel, as Mrs. Savage did here. In those cases, however, no question of jurisdiction was raised, and it was purposely avoided. The suits were originally brought at common law, and were discontinued upon a stipulation by counsel for the steamers that they would appear and make no defense on the merits, if libels in admiralty were substituted for the common-law suits.

Wheeler, Cortis & Haight (Charles S. Haight and Franklin A. Wagner, of counsel), for appellants.

Convers & Kirlin (J. Parker Kirlin and John M. Woolsey, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

PER CURIAM. Decrees affirmed, on opinion of Hough, District Judge.

---

## HENDERSON v. KANAWHA DOCK CO.

### THE KEYSTONE STATE.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1911.)

No. 1,009.

**1.** MARITIME LIENS (§ 5*)—REPAIRS MADE ON AUTHORITY OF OWNER—VESSEL IN HOME PORT.

Where the owner actually authorizes repairs to be made on the credit of his ship, the person making them in a foreign port has a maritime lien therefor: and the fact that they were ordered by the master to be made in a foreign port while the vessel was still in her home port is immaterial.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 7; Dec Dig. § 5.*]

**2.** ADMIRALTY (§ 118*)—APPEAL—DECISIONS REVIEWABLE.

The ruling of a court of admiralty disallowing a claim filed against the proceeds of a vessel sold in a suit between other parties involves a separate issue, and is not reviewable, except on an appeal by the claimant.

[Ed. Note.—For other cases, see Admiralty, Dec. Dig. § 118.*]

Appeal from the District Court of the United States for the Southern District of West Virginia, at Charleston.

Suit in admiralty by the Kanawha Dock Company against the steamboat Keystone State. From an order of the District Court, James A. Henderson, receiver of the Pittsburgh & Cincinnati Packet Line, appeals. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes