Peter IGNERI and Theresa Igneri,
Plaintiffs-Appellants,

v.

CIE. de TRANSPORTS OCEANIQUES,
Defendant-Appellee.

No. 351, Docket 27801.

United States Court of Appeals
Second Circuit.

Argued June 6, 1963.

Decided Sept. 18, 1963.

Philip F. DiCostanzo, DiCostanzo, Klonsky & Sergi, Brooklyn, N. Y., Robert Klonsky, Brooklyn, N. Y., of counsel, for plaintiffs-appellants.

Thomas J. Short, Dougherty, Ryan, Mahoney & Pellegrino, New York City, for defendant-appellee.

Before WATERMAN, FRIENDLY and SMITH, Circuit Judges.

FRIENDLY, Circuit Judge.

The issue, here presented for the first time in a federal Court of Appeals, is whether the wife of an injured longshoreman can recover for the loss of her husband's consortium caused by negligence of the shipowner or unseaworthiness of the ship. Two other district judges have concluded, as Judge Bartels did here, that she cannot. Bergamaschi v. Isthmian Lines, Inc., 1959 A.M.C. 1862 (S.D.N.Y.); Pruitt v. M. S. Rigoletto, 211 F.Supp. 295 (E.D.Mich.1962). We agree.

Peter and Theresa Igneri, husband and wife, brought this action in the District Court for the Eastern District of New York against Cie. de Transports Oceaniques. Their complaint invoked federal jurisdiction on the basis of diverse citizenship, the Igneris being alleged to be citizens of New York and defendant a foreign corporation. In a "First Cause of Action," Peter Igneri claimed damages for injuries sustained when he was struck by a bale of rubber while working as a longshoreman, in the employ of a stevedoring contractor, aboard defendant's vessel in Brooklyn harbor. The injuries are claimed to be permanent and to include a fracture of the spine with complete paralysis of the lower extremities and bladder; liability was asserted on the bases of negligence by the shipowner and of unseaworthiness of the vessel. In a "Second Cause of Action," Theresa Igneri sought further damages on the ground that "heretofore and for many years prior to this occurrence [she and Peter Igneri] * * * were and still are husband and wife, living together as such and in a happy connubial state * * *" and that as a result of the oc-

currence she "has been deprived of the services of her husband, Peter Igneri, his companionship, support, love, affection and consortium, as well as all facilities and domiciliary happiness normally enjoyed in normal marriage." Judge Bartels granted defendant's motion to dismiss the second cause of action as failing to state a claim upon which relief could be granted, 207 F.Supp. 236. Subsequently he amended his order to include the statement specified in 28 U.S.C. § 1292(b); we granted a timely application by Mrs. Igneri for leave to appeal, since the appeal presented a question of novel impression which ought be determined at this time so that, in the event of our disagreeing with the district judge, the two claims could be tried together.

(1) We begin by noting our approval of Judge Bartels' overruling an argument by defendant, which indeed has not been seriously pressed in this Court, that Mrs. Igneri's claim must be dismissed because, the action having been brought on the "law side", New York law controls and New York does not recognize a wife's claim for loss of consortium. Kronenbitter v. Washburn Wire Co., 4 N.Y.2d 524, 176 N.Y.S.2d 354, 151 N.E.2d 898 (1958).

Mrs. Igneri's claim is governed not by the law of New York but by the general maritime law. Although she was not aboard ship, it was the impact on her husband, which occurred on navigable waters, that caused the injury to her. Jordan v. States Marine Corp., 257 F.2d 232 (9 Cir., 1958); Pruitt v. M. S. Rigo-

letto, supra. The same considerations as to the desirability of uniformity that are relevant to the relations between a ship and those who work upon her apply with like force to claims by a worker's wife resulting from an injury to him. Suits by a husband, father, or wife for injury allegedly resulting from a shipboard accident to a family member have uniformly been held to involve maritime torts. New York & Long Branch Steamboat Co. v. Johnson, 195 F. 740 (3 Cir., 1912); Plummer v. Webb, 19 F.Cas. 891, 892–893 (No. 11,233) (C. C. Maine 1827); Pruitt v. M. S. Rigoletto, supra; Westerberg v. Tide Water Associated Oil Co., 304 N.Y. 545, 110 N.E.2d 395 (1953). The wrong to Mrs. Igneri, if any, being maritime, it is unnecessary to do more than cite Garrett v. Moore-McCormack Co., 317 U.S. 239, 244–245, 63 S.Ct. 246, 87 L.Ed. 239 (1942); Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409–410, 74 S.Ct. 202, 98 L.Ed. 143 (1953); and Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 628, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959), for the proposition that if the maritime law recognizes a claim such as that here asserted, this could not be defeated by a contrary New York rule.[1]

(2) Although New York's denial of a claim by a wife for loss of consortium is thus in no way decisive, it does not follow that reference to the common law generally is without relevance. Maritime law draws on many sources; when there are no clear precedents in the law of the sea, admiralty judges often look to the law prevailing on the land. See

---

[1]. It is true that in actions brought to recover for the death of longshoremen injured while working aboard ship in state territorial waters, state law is held to govern the existence and also the attributes of a cause of action for wrongful death. Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921); The Tungus v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959). But this is a special situation wherein state law is utilized to fill a gap in the maritime law, created by the holding, in The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), that there is no liability for wrongful death under

the general maritime law—a holding which a penetrating commentator has suggested the Supreme Court would have done better to overrule. D. Currie, Federalism and the Admiralty: "The Devil's Own Mess," 1960 Supreme Court Review 158, 188, 195, 196. As shown by the cases cited in the text, this exceptional doctrine would not be followed as an analogy so as to permit state law to defeat a claim for a tort on navigable waters recognized by maritime law. See also, as to survival of a maritime claim against the estate of a defendant, Just v. Chambers, 312 U.S. 383, 387–392, 61 S.Ct. 687, 85 L.Ed. 903 (1941).

**260**

Gilmore and Black, Admiralty (1957), § 1-16. At least this much is true. If the common law recognized a wife's claim for loss of consortium, uniformly or nearly so, a United States admiralty court would approach the problem here by asking itself why it should not likewise do so; if the common law denied such a claim, uniformly or nearly so, the inquiry would be whether there was sufficient reason for an admiralty court's nevertheless recognizing one. Compare The Harrisburg, 119 U.S. 199, 213–214, 7 S.Ct. 140, 30 L.Ed. 358 (1886). So we turn to the common law.

■■ It was early held, and still is in the great majority of American states, that one who causes personal injury to a married woman, intentionally or negligently, is subject to liability to her husband for loss of consortium [2] as well as for any reasonable expenses incurred by him in providing medical treatment. American Law Institute, Restatement of Torts (1938), § 693; see Prosser, Torts (2d ed. 1955), at 701; Note, Judicial Treatment of Negligent Invasion of Consortium, 61 Colum.L.Rev. 1341, 1348–49 (1961). But until 1950 no decision (save for two that were rather promptly disapproved [3]) allowed a recovery by a wife for loss of consortium resulting from a negligent injury to her husband. Restatement of Torts, supra, § 695; 1 Harper & James, Torts (1956), at 641; Holbrook, The Change in the Meaning of Consortium, 22 Mich.L.Rev. 1, 2–4 (1923). In that year the Court of Appeals for the District of Columbia Circuit, in Hitaffer v. Argonne Co., 87 U.S.App. D.C. 57, 183 F.2d 811, rejected the monolithic authority to the contrary and held, under the domestic law of the District,[4] that a wife could obtain such a recovery. Since 1950 eight state courts have followed the Hitaffer decision,[5] federal courts have interpreted the law of two other states to the same effect,[6] and in one state the same result has been achieved by statute.[7] As against the 12 American jurisdictions [8] which may thus

2. "Consortium" is the mutual right of the marriage partners to each other's society, companionship, and affection, including sexual intercourse, and, in the husband's case, his right to the services of his wife. See Lippman, The Breakdown of Consortium, 30 Colum.L.Rev. 650 (1930).

3. Hipp v. E. I. Du Pont de Nemours & Co., 182 N.C. 9, 108 S.E. 318, 18 A.L.R. 873 (1921), overruled by Hinnant v. Tide Water Power Co., 189 N.C. 120, 126 S.E. 307, 37 A.L.R. 889 (1925); Griffen v. Cincinnati Realty Co., 27 Ohio Dec. 585 (Super.Ct.1913), disapproved sub silentio by Smith v. Nicholas Bldg. Co., 93 Ohio St. 101, 112 N.E. 204, L.R.A. 1916E. (1915).

4. Although the Hitaffer opinion does not state the type of work in which the injured husband was engaged, it appears that the case had no maritime aspect, and that the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., were involved only because that Act has been adopted as the applicable workmen's compensation statute for the District of Columbia. See D.C.Code 1940, §§ 36–501, 36–502.

5. Missouri Pacific Transportation Co. v. Miller, 227 Ark. 251, 299 S.W.2d 41, 45–49 (1957); Stenta v. Leblang, 185 A.2d 759 (Del.1962); Brown v. Georgia-Tennessee Coaches, Inc., 88 Ga.App. 519, 77 S.E.2d 24 (1st Div.1953), and Bailey v. Wilson, 100 Ga.App. 405, 111 S.E.2d 106 (2d Div.1959); Dini v. Naiditch, 20 Ill.2d 406, 170 N.E.2d 881 (1960); Acuff v. Schmit, 248 Iowa 272, 78 N.W.2d 480 (1956); Montgomery v. Stephan, 359 Mich. 33, 101 N.W.2d 227 (1960); Novak v. Kansas City Transit, Inc., 365 S.W.2d 539 (Mo.1963); Hoekstra v. Helgeland, 78 S.D. 82, 98 N.W.2d 669.

6. Duffy v. Lipsman-Fulkerson & Co., 200 F.Supp. 71 (D.Mont.1961); Cooney v. Moomaw, 109 F.Supp. 448 (D.Neb.1953), and Luther v. Mample, 250 F.2d 916, 922 (8 Cir., 1958) (Nebraska law).

7. Ore.Rev.Stat. § 108.010 (1955).

8. This total includes the District of Columbia, where Hitaffer is still the law as to the wife's rights against parties other than the husband's employer. The case was "overruled" in Smither & Co. v. Coles, 100 U.S.App.D.C. 68, 242 F.2d 220, cert. denied, 354 U.S. 914, 77 S.Ct. 1299, 1 L.Ed.2d 1129 (1957), but only as to its additional holding that § 5 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905, see note 4 supra, did not bar the wife's

be said to have espoused the Hitaffer result, 19 such jurisdictions, which have considered the question since Hitaffer, have continued to deny recovery to a wife.[9] So also has the House of Lords, Best v. Samuel Fox & Co., [1952] A.C. 716, without a dissenting voice. However, in a number of these cases the opinions have made it plain, and others have implied, that the court agreed with Hitaffer in principle but felt constrained to leave any "change in the common law" to the legislature.[10] The commentator vote has been considerably more favorable to the Hitaffer result than the judicial. We have found only two voices,[11] but these notable ones, against the wife's recovery.[12]

action against the employer. See also Thibodeaux v. J. Ray McDermott & Co., 276 F.2d 42, 47–48 (5 Cir., 1960). The ruling in Hitaffer on the point here relevant was followed in Rollins v. District of Columbia, 105 U.S.App.D.C. 155, 265 F.2d 347 (1959), and in Aubrey v. United States, 103 U.S.App.D.C. 65, 254 F.2d 768, 772–773 (1958), although in the latter case, as in Brown v. Curtin & Johnson, Inc., 95 U.S.App.D.C. 234, 221 F.2d 106, 108 (1955), the court suggested that it might sometime want to reconsider the question.

9. Smith v. United Constr. Workers, 271 Ala. 42, 122 So.2d 153 (1960); Jeune v. Del E. Webb Constr. Co., 77 Ariz. 226, 269 P.2d 723 (1954); Deshotel v. Atchison, T. & S. F. Ry., 50 Cal.2d 664, 328 P.2d 449 (1958); Johnson v. Enlow, 132 Colo. 101, 286 P.2d 630, 634 (1955); Lockwood v. Wilson H. Lee Co., 144 Conn. 155, 128 A.2d 330 (1956); Ripley v. Ewell, 61 So.2d 420 (Fla.1952); Criqui v. Blaw-Knox Corp., 318 F.2d 811 (10 Cir., 1963) (Kansas law); La Eace v. Cincinnati, N. & C. Ry., 249 S.W.2d 534 (Ky.1952); Coastal Tank Lines, Inc. v. Canoles, 207 Md. 37, 113 A.2d 82 (1955); Snodgrass v. Cherry-Burrell Corp., 103 N.H. 56, 164 A.2d 579 (1960); Larocca v. American Chain & Cable Co., 23 N.J.Super. 195, 92 A.2d 811 (App.Div. 1952); Kronenbitter v. Washburn Wire Co., 4 N.Y.2d 524, 176 N.Y.S.2d 354, 151 N.E.2d 898 (1958); Nelson v. A. M. Lockett & Co., 206 Okl. 334, 243 P.2d 719 (1952); Neuberg v. Bobowicz, 401 Pa. 146, 162 A.2d 662 (1960); Page v. Winter, 240 S.C. 516, 126 S.E.2d 570 (1962); Garrett v. Reno Oil Co., 271 S.W.2d 764 (Tex.Civ.App. 1954); Ash v. S. S. Mullen, Inc., 43 Wash.2d 345, 261 P.2d 118 (1953); Seagraves v. Legg, 127 S.E.2d 605 (W.Va.1962); Nickel v. Hardware Mut. Cas. Co., 269 Wis. 647, 70 N.W.2d 205 (1955).

See also Burk v. Anderson, 232 Ind. 77, 109 N.E.2d 407, 408 (1952), and McVickers v. Chesapeake & O. Ry., 194 F. Supp. 848, (E.D.Mich.1961); Hartman v. Cold Spring Granite Co., 247 Minn. 515, 77 N.W.2d 651 (1956); Simpson v. Poindexter, 241 Miss. 854, 133 So.2d 286 (1961).

10. E. g., Smith v. United Constr. Workers, 271 Ala. 42, 122 So.2d 153; Ripley v. Ewell, 61 So.2d 420 (Fla.); Larocca v. American Chain & Cable Co., 23 N.J. Super. 195, 92 A.2d 811; Page v. Winter, 240 S.C. 516, 126 S.E.2d 570; Garrett v. Reno Oil Co., 271 S.W.2d 764 (Tex.Civ. App.)—all supra note 9.

11. Jaffe, Damages for Personal Injury: The Impact of Insurance, 18 Law & Contemp.Prob. 219, 228–30 (1953); Pound, Individual Interests in the Domestic Relations, 14 Mich.L.Rev. 177, 194–95 (1916).

12. The pro-wife vote includes Prosser, Torts (2d ed. 1955), at 704–05; 1 Harper & James, Torts (1956), at 643; Holbrook, The Change in the Meaning of Consortium, 22 Mich.L.Rev. 1, 8–9 (1923); Lippman, The Breakdown of Consortium, 30 Colum.L.Rev. 651, 664–68 (1930); Kinnaird, Right of Wife to Sue for Loss of Consortium Due to Negligent Injury to Her Husband, 35 Ky.L.J. 220, 223 (1946); Note, Judicial Treatment of Negligent Invasion of Consortium, 61 Colum. L.Rev. 1341, 1352–57 (1961); 55 Mich. L.Rev. 721 (1957); 39 Cornell L.Q. 761 (1954); 1 U.C.L.A.L.Rev. 223 (1954); 41 Geo.L.J. 443 (1953); 64 Harv.L.Rev. 672 (1951); 29 N.C.L.Rev. 178 (1951); 25 Tulane L.Rev. 293 (1951); 20 Fordham L.Rev. 342 (1951); 39 Mich.L.Rev. 820 (1941); 9 Ind.L.J. 182 (1933); 5 Cornell L.Q. 171 (1920).

See also Green, Relational Interests, 29 Ill.L.Rev. 460, 466–67 (1934); Brett, Consortium and Servitium: A History and Some Proposals, 29 Austral.L.J. 321, 432–33 (1955).

The Restatement of Torts, published in 1938, stated that "The wife has a similar interest in the society and sexual relations with her husband as he has in such relations with her. However, the law has not recognized her right to recover against one who has caused harm to such interests by conduct which is not intended to harm them." § 695, Comment a. Preliminary drafts of the Restatement

The prime argument for the Hitaffer result is equality between the sexes. Since the husband's cause of action for negligent invasion of consortium is generally recognized, it is said to fly in the face of the modern policy favoring the "emancipation" of married women to deny a corresponding action to the wife, whose "interest in the undisturbed relation with her consort is no less worthy of protection than that of her husband." Prosser, supra, at 704; see Hitaffer v. Argonne Co., supra, 183 F.2d at 819; cf. Bennett v. Bennett, 116 N.Y. 584, 590–91, 23 N.E. 17, 18–19, 6 L.R.A. 553 (1889). The wife's interest in the marital relation having long been accorded legal protection by claims for alienation of affections and similar torts, see Bennett v. Bennett, supra, it is argued that "[r]elief is extended to the wife in [these] * * * cases for one basic reason, the interest of society in the protection of the family * * *. If this is the interest to be protected, * * * the law's protection should extend as well to the negligent as to the intentional injury." Montgomery v. Stephan, supra note 5, 101 N.W.2d at 234; see Lippman, supra, 30 Colum.L.Rev. at 668. The "in-

tentional" nature of such torts as alienation of affections is said not to afford a valid reason to "invoke the principle which gives a right of action for an act done malevolently when no right of action would exist if the act were done without malice," since in such torts "there is never that active malevolence toward the plaintiff which is made the gist of the right of action." Holbrook, supra, 22 Mich.L.Rev. at 8.[13] Finally, it is urged that the harm done to the wife through serious injury to the husband is undeniably real, if only because "a sick, lame, nervous spouse is less desirable as a companion than a spouse in normal physical condition," Holbrook, supra, 22 Mich.L.Rev. at 8, but more especially when the injury permanently forecloses the wife's opportunity of having sexual relations and bearing children. Hence, it is said, the law should grant the wife such compensation as it can for the harm that she has suffered, and will continue to suffer, through the fault of the defendant.

The opposing arguments begin with the long history of common law authority against the wife's action, see Deshotel v. Atchison, T. & S. F. Ry., supra, 328 P.2d at 451,[14] but in no way stop there. It is

Second, for which Dean Prosser is the Reporter, have not yet reached this subject.

13. Indeed, it has been contended that the harm to the wife by negligently inflicted loss of consortium will often be greater than that done by an "intentional" invasion, since "desertion is usually, and adultery always grounds for divorce, thus affording the injured spouse a chance to remarry, but physical disability of a spouse never leads to a legal opportunity to start anew and build a healthy family. Instead, in serious cases, the uninjured spouse is charged with the lifelong duty of nursing an invalid, and frequently must forego the privilege of having legitimate children." Note, supra, 61 Colum.L.Rev. at 1354. On the other hand, Professor Jaffe argues, supra, 18 Law & Contemp.Prob. at 229: "But the law, of course, often distinguishes between willful and negligent interference as in the cases of emotional distress. An interest is protected only in so far as it serves a social purpose to protect it. When the act is willful the law may award damages for penal pur-

poses. But more basically the law quite properly recognizes that a willful assault on the personality inflicts a far more serious blow. It is almost unthinkable that a court should reduce consortium to the bare element of the opportunity for sexual intercourse and pretend to see no basic difference of offense to the wife's interest between the incidental loss of that opportunity and the deliberate destruction of the whole marital relationship." Proponents of the wife's claim would, of course, deny that it relates solely "to the bare element of the opportunity for sexual intercourse * * *."

14. In Best v. Samuel Fox & Co., supra, [1952] A.C. at 730, Lord Goddard makes a point—also noted in Brett, supra, 29 Austral.L.J. at 395—which would render the absence of authority more significant than it has seemed to some courts and commentators. Proponents of the wife's action have sometimes sought to explain the lack of common law precedent as flowing from the wife's procedural inability, before passage of the Married Women's Acts, to bring any action without

contended that when the husband sues for his wife's injury, the real basis of his recovery is loss of her services, with the "sentimental" aspects of the recovery being in the nature of "parasitic" damages; since the wife in contrast has no right to her husband's services, but rather is entitled to his reciprocal obligation of support, and since she effectively recovers for this by sharing his own recovery for lost earnings due to his injury, the alleged "discrimination" between the spouses is said to be actually a rational distinction. See Kronenbitter v. Washburn Wire Co., supra, 176 N.Y.S.2d at 355; Best v. Samuel Fox & Co., supra, [1952] A. C. at 735–36 (Lord Reid).[15] With loss of services eliminated, the wife's recovery would

joining her husband as plaintiff; she had the right here contended for, it is said, but no remedy. Hitaffer v. Argonne Co., supra, 183 F.2d at 816. Lord Goddard concedes that the procedural bar might account for the absence of authority, prior to the Married Women's Acts, for a wife's action for alienation of affections or similar torts, since in such cases the husband "would hardly be willing to sue his own mistress," Brett, supra, 29 Austral.L.J. at 393, and if he did, would be profiting by his own wrong. See Prosser, supra, at 690–91; Bennett v. Bennett, supra, 116 N.Y. at 594, 23 N.E. at 20. But there is no reason to suppose that if the wife truly had a right to recover damages for loss of consortium resulting from physical injuries to her husband, the husband would have refused to lend his name to her action so as to provide her with a remedy, "especially as in the old law the damages when recovered would belong to him." [1952] A.C. at 730. Compare Holbrook, supra, 22 Mich.L.Rev. at 2–4.

It thus seems likely that the absence of pre-1950 authority for the wife's recovery bespoke not merely a procedural but a substantive disability. Blackstone was apparently of this view: "notice is only taken of the wrong done to the superior of the parties related, by the breach and dissolution of either the relation itself, or at least the advantages accruing therefrom; while the loss of the inferior by such injuries is totally unregarded." 3 Blackstone, Commentaries * 143. See also Brett, supra, 29 Austral. L.J. at 322. An American court which conceded that "the fundamental reason the wife could not recover at common law * * * was on account of *her inferior status*" has gone on to describe that concept as "totally repudiated" by modern legislation and to rely squarely on this policy reversal as a ground for recognizing the wife's action today. Novak v. Kansas City Transit, Inc., supra, note 5, 365 S. W.2d at 543, 547.

15. But see Brett, supra, 29 Austral.L.J. at 396: "[I]n the middle of the twentieth century, there is no principle which jus-

tifies giving the action to a husband and denying it to a wife. This can only be justified by an appeal to history. But history does not support the extension, approved by the House [of Lords in Best v. Samuel Fox & Co., supra], of the enticement [or alienation of affections] action to the wife." Moreover, the historical assumption that loss of services constitutes the heart of the husband's recovery has been strongly attacked. See, e. g., Hitaffer v. Argonne Co., supra, 183 F.2d at 813; Dini v. Naiditch, supra, 170 N.E.2d at 891. Prosser states that "The loss of 'services' is an outworn fiction," at 704, and Harper & James that "the often hypothetical 'services' may [be] and frequently are the least valuable aspect of the incidents of the marital relation which presumably are as valuable to the wife as to the husband * * *" Vol. 1, at 643. It is further pointed out that damages may be awarded for alienation of affections without pleading or proving any loss of services, see Bennett v. Bennett, supra, 116 N.Y. at 587, 23 N.E. at 17. The "dismemberment" of the concept of consortium so as to give a predominant role to the element of services is also said to lack valid precedent. See Lippman, supra, 30 Colum.L.Rev. at 666–67. It does appear, as argued in Note, supra, 61 Colum.L.Rev. at 1343–44, that the earliest cases allowing recovery to the husband, although they often employed the master-servant analogy, were more concerned about the loss of society and comfort than the loss of services. See, e. g., Guy v. Lusy, 2 Rolle 51, 81 Eng.Rep. 653 (K.B. 1618) ("mes cest action next founded pur ascun tort fait al feme, bes sur le prejudice que le baron ad sustaine, viz. le perder del' company, & comfort que un feme port a sa baron * * *."); Hyde v. Scyssor, 3 Cro. 538, 79 Eng.Rep. 462 (K.B. 1619) ("but here the action is not brought for the battery of his wife, but for the loss and damage of the husband, for want of her company and aid * * * as where an action brought by the master for the battery of his servant * * *."); Young v. Prid, 4 Cro. 89, 79 Eng.Rep. 679 (Ex.

involve only such elements as the diminution of the value of her husband's society and affection and the deprivation of sexual relations and the attendant loss of child-bearing opportunity—elements which, it is argued, are too personal, intangible, and conjectural to be measured in pecuniary terms by a jury. See Deshotel v. Atchison, T. & S. F. Ry., supra, 328 P.2d at 451; Pound, supra, 14 Mich. L.Rev. at 194, 196. It is feared, moreover, that recognition of a cause of action on behalf of the wife would lead to a "double recovery." The husband in suing for his own injuries may recover not only for lost earnings (part of which recovery presumably goes to support his wife) but also for the impairment of function evidenced by his lost or diminished ability to engage in sexual intercourse, see Jaffe, supra, 18 Law & Contemp.Prob. at 229; cf. Dagnello v. Long Island R. R., 289 F.2d 797, 808 (2 Cir., 1961); Helmstetler v. Duke Power Co., 224 N.C. 821, 824, 32 S.E.2d 611, 613 (1945), and still further, probably, for the value of his wife's nursing services. See McCormick, Damages (1935), § 90. The fear is that in the wife's suit the jury will award duplicative damages to her for some of the same elements of injury. See Jaffe, supra, at 229; Dini v. Naiditch, supra, 170 N.E.2d at 894–896 (Schaefer, C. J., dissenting). It is true that, as Chief Justice Schaefer apparently concedes, see id., 170 N.E.2d at 895, this danger would be minimized where, as in the present case, the husband and wife have joined their claims so that these may be tried to a single jury. But once the wife's cause of action was recognized,

the courts would have no power to require such a joinder—see 3 Moore, Federal Practice (1948), at 1808, and 1 Harper & James, supra, at 640—and it is doubted that the trial court's instructions and its own power, combined with that of the appellate Court, Dagnello v. Long Island R. R., supra, to review verdicts for excessiveness would suffice to remove the danger of double recovery. Other less persuasive arguments are that the harm to the wife through her husband's injury is too "indirect" to warrant recovery, since it was suffered without physical impact or apprehension thereof, Best v. Samuel Fox & Co., supra, [1952] A. C. at 731 (Lord Goddard), and that allowing recovery by the wife would open the door to claims by children of the injured man and others whose "relational interests" were even more attenuated. Neuberg v. Bobowicz, supra note 9, 162 A.2d at 666–67; Best v. Samuel Fox & Co., supra, at 734 (Lord Morton of Henryton). Compare Prosser, supra, at 704.

Finally, in answer to the "equality" argument, it is argued that the husband's recovery for loss of consortium should itself be abrogated. That right is said to be "a fossil from an earlier era," Jaffe, supra, at 229—an anachronistic remnant of the wife's common law inability to sue and recover damages for her own injuries. Best v. Samuel Fox & Co., supra, at 728, 733, 735 (Lords Porter, Goddard, and Morton of Henryton); Neuberg v. Bobowicz, supra, 162 A.2d at 667. Adopting this view, some states, either by statute or decision, have eliminated the husband's action,[16] while others have re-

Ch.1626) ("for the loss which he had in wanting her company"). See Pound, supra, 14 Mich.L.Rev. at 188–89. Compare Brett, supra, 29 Austral.L.J. at 325–26, 328.

It is noteworthy, however, that a few American jurisdictions, while preserving the husband's right to recover for loss of his wife's services, have disallowed any recovery by him for the "sentimental" aspects of consortium. West v. City of San Diego, 54 Cal.2d 469, 6 Cal.Rptr. 289, 353 P.2d 929 (1960); Lockwood v. Wilson H. Lee Co., 144 Conn. 155, 128 A.2d 330

(1956) (only for expenditures required by wife's inability to perform services); Martin v. United Elec. R. Co., 71 R.I. 137, 42 A.2d 897 (1945); Hawkins v. Front St. Cable Ry., 3 Wash. 592, 28 P. 1021, 16 L.R.A. 808 (1892).

16. Va.Code Ann. § 55–36 (1950); Kan. Gen.Stat.Ann. § 23–205 (1949), as construed in Clark v. Southwestern Greyhound Lines, 144 Kan. 344, 58 P.2d 1128 (1936); Rodgers v. Boynton, 315 Mass. 279, 52 N.E.2d 576 (1943); Helmstetler v. Duke Power Co., 224 N.C. 821, 824, 32 S.E.2d 611, 613 (1945).

stricted it to recovery for loss of services.[17] Although several commentators approving Hitaffer have indicated that producing "equality" between the sexes in this way would suit them just as well,[18] such a solution would be unacceptable to most adherents of that case.

(3) With the common law authorities so conflicting [19] and the opposing arguments so nearly in balance, we turn to an inquiry whether the historic common law position or the Hitaffer result comports better with other relevant elements of maritime law.

Defendant contends that the former answer can be rather quickly reached on the basis that the maritime law does not recognize even a husband's right to sue for loss of consortium, so that the "equality" argument is unavailable to the wife. In a District Court opinion in Savage v. New York, N. & H. S. S. Co., adopted by this Court, 185 F. 778, 781 (1911), Judge Hough stated in dictum that "No instance of what is in substance an action per quod consortium amisit has been shown in admiralty." But in the following year in New York & Long Branch Steamboat Co. v. Johnson, supra, 195 F. 740 (3 Cir., 1912), a court created precisely such an "instance * * * in admiralty" by holding that a husband could sue "for the injury sustained by him through said injury to his wife" while a passenger on a steamship; the husband was awarded $1,147, of which $447 was for medical expenses and $700 "for the loss of the aid, comfort and society of his wife * * * including therein probable future deprivation and expenses." (Record on Appeal, p. 237) The decision relied on two authorities, neither entirely relevant. One was the decision by Mr. Justice Story on circuit in Plummer v. Webb, supra, 19 F.Cas. 891, that a father, having a right to the services of his minor children, might sue in admiralty for damages from the tortious abduction of his son while on an ocean voyage. The other, even more dubious, was The Sea Gull, 21 F.Cas. 909 (No. 12,578) (C.C.Md.1865), allowing a husband to recover for his wife's death—a situation in which damages have traditionally been limited to the "pecuniary" loss without the sentimental aspects of consortium, see Michigan Central R. R. Co. v. Vreeland, 227 U.S. 59, 70–74, 33 S.Ct. 192, 57 L.Ed. 417 (1913), Gerardo v. United States, 101 F.Supp. 383, 385 (N.D.Cal.1951), and a decision which was overruled by The Harrisburg, supra, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358. On the other hand, the dismissal of a husband's action for both medical expenses and loss of society as the result of an alleged assault on his wife during a steamship voyage was affirmed, although without any explanation, in Klein v. Munson S.S. Line, 1934 A.M. C. 1310, 242 App.Div. 179, 272 N.Y.S. 704 (1st Dept.1934).[20] We have found

---

17. See cases cited note 15 supra.

18. 39 Mich.L.Rev. 820 (1941); 20 Fordham L.Rev. 342 (1951); 64 Harv.L.Rev. 672 (1951); 29 N.C.L.Rev. 178 (1951); 39 Cornell L.Q. 761 (1954). See also Brett, supra, 29 Austral.L.J. at 433.

19. It was said in 1916 that the civil law does not impose civil liability for negligent injury to the "sentimental" aspects of the marital relation, see Pound, supra note 11, 14 Mich.L.Rev. at 189—a point that would be of some importance in determining the content of maritime law. However, it appears doubtful that the statement correctly represents French law as that has recently evolved. See Marty et Reynaud, Droit Civil (1962), Nos. 382, 383, 384. The German Civil Code, Art. 845, recognizes a delictual liability for

loss of services, but Art. 253 would seem literally to rule out a claim for the nonpecuniary elements of consortium; we have not investigated the texts or the authorities.

20. The broad statement in 1 Benedict, Admiralty (6th ed. Knauth, 1940), at 366, that "When a personal injury to a wife is maritime by locality, her husband may recover his damages for loss of her services, loss of consortium, etc., in admiralty," thus rests solely on N. Y. & Long Branch Steamboat Co. v. Johnson, supra. The Sea Gull, supra, also cited, is inapposite, for reasons indicated in the text. Such cases as Gustafson v. Swedish American Line, 1940 A.M.C. 86 (N.Y. Sup.Ct. Kings County, 1940), La Frate v. Compagnie Generale Transatlantique, 1952 A.M.C. 544 (S.D.N.Y.1952), and

no maritime cases relating to claims by wives for loss of consortium other than the district court decisions denying such claims by wives of longshoremen which we cited at the outset, and certain decisions denying such claims by wives of seamen which we will discuss below. Our investigation of maritime law generally being thus inconclusive, we turn to the particular bases for recovery here asserted.

(4) We deal first with the claim based on negligence.

 If Peter Igneri had been a seaman, it would be altogether clear that his spouse's claim based on negligent injury to him would fail. Prior to the Jones Act, this result would have been readily reached on the basis, severely criticized, see 1 Harper & James, supra, at 640, but nevertheless uniformly followed, that where the person directly injured has no claim, as the seaman did not, The Osceola, supra, 189 U.S. at 175, 23 S.Ct. 483, 47 L.Ed. 760, the spouse also has none. See Savage v. New York, N. & H. S. S. Co., supra, 185 F. at 781; Gustafson v. Swedish American Line, 1940 A.M.C. 86 (N.Y.Sup.Ct. Kings County, 1940); Smither & Co. v. Coles, supra; 1 Harper & James, supra, at 640. When Congress, by the Jones Act, 46 U.S.C. § 688, gave a seaman the right to recover for personal injury caused by the employer's negligence, it did not authorize recovery by the seaman's wife for loss of consortium. As to non-fatal injuries this is plain from the language of the statute, which authorizes only the seaman himself (not his wife) to "maintain an action for damages at law." Westerberg v. Tide Water Associated Oil Co., supra, 304 N.Y.

Born v. Norwegian America Line, Inc., 173 F.Supp. 33 (S.D.N.Y.1959), cited in the 1962 pocket supplement to Benedict as authority for the proposition in question, similarly fail to support it. They do not hold that the husband can recover for loss of his wife's consortium or even for the services element thereof, but go off on the ground that any action brought by the husband on the basis of the wife's shipboard injury is subject to the same defenses, arising out of the contract of carriage, as her own action would be.

545, 110 N.E.2d 395; Jordan v. States Marine Corp., supra, 257 F.2d at 233 (by concession). And it is established also that the damages recoverable by a seaman's widow suing for wrongful death under the Jones Act do not include recovery for loss of consortium. Tate v. C. G. Willis, Inc., 154 F.Supp. 402, 403 (E.D.Va.1957); Gerardo v. United States, supra, 101 F.Supp. at 385, and authorities cited; see Michigan Central R. R. v. Vreeland, supra, 227 U.S. at 71.[21]

 It is true that, as a longshoreman, Peter Igneri, unlike a seaman, had a right to recover for personal injury for negligence of the vessel, based on nonstatutory maritime law. Pope & Talbot, Inc. v. Hawn, supra, 346 U.S. at 413, 74 S.Ct. at 207, 98 L.Ed. 143 and cases cited in note 4 (1953). But that does not mean that in considering the novel question whether the spouse of a longshoreman should be allowed to recover for loss of consortium, we should ignore the maritime law denying any such right to the spouse of a seaman. The failure of the Jones Act to confer such a right on the spouse of a seaman cannot be dismissed as an inadvertence. The policy of the Federal Employers' Liability Act, the régime which the Jones Act made applicable to seamen, was that the new remedy for the employee was to be exclusive and that claims of relatives recognized by state law were to be abrogated; the FELA had been thus authoritatively construed before the Jones Act was passed, New York Central & H. R. R. Co. v. Tonsellito, 244 U.S. 360, 37 S.Ct. 620, 61 L.Ed. 1194 (1917); see Louisville & N. R. R. Co. v. Lunsford, 216 Ga. 289, 116 S.E.2d 232 (1960).

21. Under the Death on the High Seas Act, 46 U.S.C. § 761, a widow can recover damages only for the "pecuniary loss" sustained by the death, and not for the loss of her husband's society and companionship. Middleton v. Luckenbach S.S. Co., 70 F.2d 326, 330 (2 Cir., 1934); First Nat'l Bank in Greenwich v. National Airlines, Inc., 171 F.Supp. 528, 537 (S.D. N.Y.1958).

■ If there were evidence that maritime law generally recognized a claim for negligent injury to such an intangible right, or if the common law clearly authorized a wife's recovery, the gravitational pull of such concepts with respect to the wife of a longshoreman might be stronger than that of the analogy to the statute denying such recovery to a seaman's wife. But, with neither of these conditions realized, our duty to avoid capricious differences in treatment between similarly situated persons forbids our fashioning a rule that would place the spouse of a harbor-worker in a different, and better, position than the spouse of a seaman. Perceiving the anomaly in the rule which forbade a seaman, but not a harbor-worker, to recover for negligence against the ship, Congress largely ended the discrimination against seamen by passing the Jones Act; we should not create a new anomaly by giving the harbor-worker's wife a claim denied to the seaman's. Here Congress has utilized its constitutional power "to alter, qualify, or supplement" the maritime law "as experience or changing conditions might require," Panama R. R. Co. v. Johnson, 264 U.S. 375, 386, 44 S.Ct. 391, 393–394, 68 L.Ed. 748 (1924). Its action in doing so "must not be read in a spirit of mutilating narrowness"; the courts must give "'hospitable scope' to Congressional purpose even when meticulous words are lacking." United States v. Hutcheson, 312 U.S. 219, 235, 61 S.Ct. 463, 467–468, 85 L.Ed. 788 (1941). We can think of no reason why Congress, having ruled out a maritime claim against the ship for loss of consortium by the spouse of a negligently injured seaman, would wish the courts to construct one for the spouse of a negligently injured stevedore.

■ (5) We come finally to the wife's claim based upon a warranty of seaworthiness. That doctrine, as stated in Mr. Justice Brown's much quoted second proposition in The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760 (1903), is "That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship." Nothing was said as to the doctrine's going beyond the seaman so as to include his wife or children. Nor do we find any basis for such an extension in later Supreme Court decisions, of which Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), would be most helpful to the appellant. True, the opinion in that case declared "that contract alone is neither the sole source of the liability [for unseaworthiness] nor its ultimate boundary", and that the warranty of seaworthiness extended beyond seamen to others "who do the work of the sea without benefit of contract with the owner," 328 U.S. at 91, 66 S.Ct. at 876, 90 L.Ed. 1099. But the augmentation thus effected was still limited to persons doing the ship's work—the owner may not nullify his liability for unseaworthiness "by the device of having all who man the ship hired by others willing to furnish men for such service at sea or ashore", 328 U.S. at 91–92, 66 S.Ct. at 876, 90 L.Ed. 1099; the liability extends to cases "where the ship's work is done by others not in such an immediate relation of employment to the owner", 328 U.S. at 93, 66 S.Ct. at 876–877, 90 L.Ed. 1099 "to those who render [the ship's service] with his consent or by his arrangement," 328 U.S. at 95, 66 S.Ct. at 877–878, 90 L.Ed. 1099, to "men intermediately employed to do this work," 328 U.S. at 96, 66 S.Ct. at 878, 90 L.Ed. 1099. Nothing in this would suggest that the warranty of seaworthiness extends to relatives of the maritime worker, of whose very existence the shipowner may be unaware.

We would not be understood as suggesting that the issue of extending the warranty of seaworthiness beyond marine workers was before the Supreme Court in these cases so that the Court's declarations that the warranty existed as to the workers would necessarily preclude its running to their spouses. The point is rather that when the Court

has created "a species of liability without fault, analogous to other well known instances in our law," Seas Shipping Co. v. Sieracki, supra, 328 U.S. at 94, 66 S.Ct. at 877, 90 L.Ed. 1099 it should not be lightly assumed that this strict liability runs to other persons not stated to be within its reach. When our law imposes strict liability, it often accompanies this with limitations, not existing in the case of liability based on fault, as to amount, as to persons benefited, or as to both. The considerations justifying absolute liability of shipowners for injury to the person or maritime workers do not necessarily prevail as to the interests of others in their relations with them—interests which, however real, rank lower in their claim for economic protection. Social policy may well require absolute liability for physical injury without imposing similar strict liability on actors and, indirectly, on the community, for damages less susceptible of monetary compensation. Recovery for personal injuries due to unseaworthiness was said by Judge Learned Hand to be "a kind of 'Workmen's Compensation Act' ", Grillea v. United States, 232 F.2d 919, 923 (2 Cir., 1956); workmen's compensation acts characteristically exclude suits by spouses or other relatives, see, e. g., the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905; 2 Larson, Workmen's Compensation Law, § 66.20; Smither & Co. v. Coles, supra, overruling the Hitaffer case on this point, and cases cited at pp. 225–26, and Thibodeaux v. J. Ray McDermott & Co., 276 F.2d 42, 47 (5 Cir., 1960). As Professor Jaffe has noted, the elimination of fault as the basis of liability deprives the damages award of any punitive or deterrent purpose, and requires consideration whether "the pooled social fund of savings should be charged with sums of indeterminate amount when compensation performs no specific economic function." 18 Law & Contemp.Prob. at 225. Appellant has cited no instance in which our law has allowed recovery for intangible injuries in the absence of fault; indeed, it has been rather slow to extent recovery for such injuries beyond intentional wrongs.[22]

Beyond all this our conclusion on the unseaworthiness claim is controlled by the negative result we have reached with respect to negligence. It would be anomalous in the last degree to hold that strict liability should have a broader reach than a related liability based upon fault. We can see no sensible basis for saying that although Congress ruled out a claim by the wife of a seaman against a palpably negligent shipowner, the wife of a longshoreman can recover against a shipowner who has been wholly without fault. Our conclusion, it should be emphasized, does not rest on the discrimination between the sexes criticized by Hitaffer and its supporters; we would reach the same result in the rare case of the husband of a seawoman as in the common ones of the wife of a seaman or of the stevedore doing seaman's work. We hold that the scheme of remedies, statutory and judicial, for injury to such maritime workers limits recovery to the person directly injured.

Affirmed.

22. Historically the husband's action for loss of consortium existed in the case of intentional or negligent acts by the defendant. Although the formulation in the Restatement of Torts, § 693a, that the defendant is liable to the husband whenever its conduct is tortious toward the wife has a convenient symmetry, there seems to be almost no authority for—or against—the imposition of liability when the defendant has been without fault, and, as suggested in the text, this result is in no way inevitable as a matter of policy.