Hattie LEMON, Plaintiff,

v.

BANK LINES, LTD., and Isthmian Lines, Inc., Defendants.

No. CV476–33.

United States District Court,
S. D. Georgia,
Savannah Division.

April 21, 1976.

James M. Thomas, Bouhan, Williams & Levy, Savannah, Ga., for plaintiff.

Ralph O. Bowden, III, Hunter, Houlihan, Maclean, Exley, Dunn & Connerat, Gustave R. Dubus, III, Chamlee, Dubus & Sipple, Savannah, Ga., for defendants.

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

LAWRENCE, Chief Judge.

Plaintiff is the wife of an injured longshoreman. She sues for loss of consortium as a result of an injury to her husband that occurred aboard the SS "Hazelbank" at Savannah in 1973. The defendants are Bank Lines, Ltd., her owner, and Isthmian Lines, Inc., the charterer. Negligence is alleged in operating a vessel having defective sweat battens in the hold of the ship.

Defendants move to dismiss on the ground that no cause of action exists under general maritime law for a wife's loss of her spouse's consortium as a result of an injury to a maritime worker on a navigable stream.

The suit is not based on the admiralty and maritime jurisdiction vested in district courts under 28 U.S.C. § 1333. Its jurisdictional predicate is diversity. The complaint contains no Rule 9(h) identification of the claim as one within the admiralty and maritime jurisdiction.

As a diversity case, state law would generally be applicable. See *Complaint of S/S Helena*, 529 F.2d 744 (5th Cir.), Slip Opinion 4/2/76, pp. 2670, 2673. Under Georgia law, a wife has an independent cause of action for loss of consortium of her husband due to tortious injury inflicted upon him. *Walden v. Coleman*, 105 Ga.App. 242, 124 S.E.2d 313; *Brown v. Georgia-Tennessee Coaches*, 88 Ga.App. 519, 77 S.E.2d 24; *Smith v. Tri-State Manufacturing Company, Inc.*, 126 Ga.App. 508, 191 S.E.2d 92; *Hightower v. Landrum*, 109 Ga. App. 510, 136 S.E.2d 425.

However, since plaintiff's husband was injured on navigable waters while working aboard the ship, the basis of her action is a maritime tort which the Constitution has placed under national power and control both as to substantive and procedural features. *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 409–10, 74 S.Ct. 202, 204–205, 98 L.Ed. 143, 150–151. See also *Chelentis v. Luckenbach S.S. Company, Incorporated*, 247 U.S. 372, 384, 38 S.Ct. 501, 503, 62 L.Ed. 1171, 1176; *J. B. Effenson Company v. Three Bays Corporation*, 238 F.2d 611, 615 (5th Cir.).

In 1963 in *Igneri v. Cie. de Transports Oceaniques*, 323 F.2d 257 the Second Circuit decided a case in which the wife of an injured longshoreman sued for damages for loss of consortium allegedly caused by the negligence of the shipowner and unseaworthiness of the vessel. The fact that a maritime tort was involved which was governed by maritime law rather than the law of New York was the underpinning of the Court's holding that the wife had no claim against the vessel owner for loss of consortium resulting from negligent injury to her husband aboard a vessel. The Court said: "Perceiving the anomaly in the rule which forbade a seaman, but not a harbor-worker, to recover for negligence against the ship, Congress largely ended the discrimination against seamen by passing the Jones Act; we should not create a new anomaly by giving the harbor-worker's wife a claim denied to the seaman's." The Circuit Court concluded that "the scheme of remedies, statutory and judicial, for injury to  . . maritime workers limits recovery to the person directly injured." At 268.

In *Sanseverino v. Alcoa Steamship Co.*, 276 F.Supp. 894 (D.Md.) the district court followed *Igneri*, holding that the wife of the injured longshoreman had no cause of action under maritime law for loss of consortium based on negligent injury to her husband. The district judge quoted the following from Judge Friendly's opinion in the Second Circuit: "We can think of no reason why Congress, having ruled out a maritime claim against the ship for loss of consortium

by the spouse of a negligently injured seaman, would wish the courts to construct one for the spouse of a negligently injured stevedore." 323 F.2d at 267.

The *Igneri* decision was also followed in *Valitutto v. D/S I/D Garrone,* 295 F.Supp. 764 (S.D.N.Y.). There the district court held that the longshoreman's widow had no claim against the vessel owner for loss of consortium resulting from her husband's death which allegedly resulted from the vessel's negligence and unseaworthiness.

In 1970 a fresh breeze suddenly blew in across the waters of American admiralty law. In *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339, the Supreme Court held that a right of action for wrongful death exists under general maritime law for the death of a longshoreman within state territorial waters. It said: "Our recognition of a right to recover for wrongful death under general maritime law will assure uniform vindication of federal policies, removing the tensions and discrepancies that have resulted from the necessity to accommodate state remedial statutes to exclusively maritime substantive concepts." At 401, 90 S.Ct. at 1788, 26 L.Ed.2d at 357. That case was followed in 1974 by *Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9. Under the judge-made death remedy created by *Moragne,* the Supreme Court ruled in *Gaudet* that there could be recovery for non-pecuniary losses, including deprivation of the society, affection, care, attention, companionship, comfort, and protection of the deceased—in short, for loss of consortium.

Under those decisions and the subsequent holdings by lower federal courts, general maritime law has preempted the field in wrongful death recoveries. There is no longer need for recognition of state statutes in such cases by the admiralty courts. In *Complaint of S/S Helena, supra,* 529 F.2d 744 the Fifth Circuit said:

"Because a persuasive rationale for the enforcement of state wrongful death statutes in admiralty courts no longer exists after *Moragne,* we hold that the wrongful death remedy provided by that case precludes recognition in admiralty of state statutes. The general maritime law will therefore govern the case before us. With that question settled, we now specify the issues that compel us to remand the case to the district court."

Unfazed by these important developments in admiralty law, defendants' counsel take comfort from them. They contend that since general maritime law governs the present case, whatever may be the right to recover for loss of consortium in a death action, the present rule is to the contrary where an *injured* harbor-worker is involved. In such a case, the *Igneri* holding as to the wife's right to recover loss of consortium is, they argue, still the law and precludes an action by the wife of a longshoreman for loss of consortium against the vessel owner. That decision is not binding in this Circuit. Further, I very much question whether such a result would ever have been reached by the Second Circuit if *Igneri* had arisen after *Gaudet.* I am unable to see the rationality of a rule that if a defendant's negligence causes death, consortium can be recovered by the widow, but where only injury results, a wife cannot. I perceive no difference in the nature of suits for wrongful death and for tortious injury justifying so bizarre and inconsistent a result. A wife may be damaged as much as a widow by the loss of her husband's society, affection, companionship and sexual congress.[1]

The same question arose in *Francis v. Pan American Trinidad Oil Company,* 392 F.Supp. 1252, 1257 (D., Del.) but the district court found it unnecessary to decide the issue. It said that: "Plaintiff Norma Francis' claim for loss of services, society and consortium also presents difficult questions.

1. In the companion suit brought by Winton Lemon for injuries he alleges that his neck was broken; that he has had extensive surgery and hospitalization, and that he is permanently disabled and is incapacitated from performing work.

Again it is not clear that a maritime tort will give rise to such an action."[2]

However, a California intermediate appellate court has lately passed directly on the issue. It reached the same conclusion toward which, as may be gathered, I was irremeably headed. The case is *Pesce v. Sama Corp.,* 54 Cal.App.3d 86, 126 Cal.Rptr. 451 (Cal.App.2d App.Dist., No. 46317, Dec. 20, 1975). Reversing the trial court's dismissal of the wife's action, the California appellate court held that the spouse of an injured longshoreman may recover under the general maritime law for loss of consortium of her husband caused by the negligence of the shipowner. I agree.

Concluding that the wife of Mr. Lemon may recover for loss of consortium, I overrule defendants' motions to dismiss her action under general maritime law.

2. The decision notes that there is dicta in *Gaudet* (414 U.S. 589, 94 S.Ct. at 817, 39 L.Ed.2d at 23, n. 25) which supports the earlier view of the Third Circuit in *New York & Long Branch Steamboat Co. v. Johnson,* 195 F. 740 as opposed to the ruling in *Igneri.* See *Francis v.* *Pan American Trinidad Oil Company, supra,* 392 F.Supp. at 1257 n. 8. The Third Circuit held in the *Johnson* case that a husband whose wife was injured by a maritime tort may maintain a suit in admiralty to recover damages sustained by him as a result of her injury.