[Civ. No. 46317. Second Dist., Div. One. Dec. 29, 1975.]

LOUIS PESCE, JR., et al., Plaintiffs and Appellants, v.
SUMMA CORPORATION et al., Defendants and Respondents.

COUNSEL

Olney, Levy, Kaplan & Tenner, Mitchell Levy and Jack Tenner for Plaintiffs and Appellants.

Lillick, McHose & Charles, Gordon K. Wright, Thomas F. Melchior and Thomas F. Freear for Defendants and Respondents.

OPINION

HANSON, J.—Plaintiff Willa Mae Pesce (hereinafter WIFE) appeals from the order of the trial court dismissing her action for loss of consortium against defendants-respondents Global Marine, Inc., Summa Corporation, and Lockheed Missile and Space Company, Inc. after general demurrers were sustained without leave to amend.

### THE CASE

The complaint of Louis Pesce, Jr., (hereinafter HUSBAND) alleges that on or about December 1, 1973, he was engaged as a harbor worker, working on the vessel HUGHES GLOMAR EXPLORER, berthed in Long Beach Harbor, California, on navigable waters of the United States, when he was struck by a piece of falling wood and seriously injured. His action for damages for personal injuries is based on the alleged negligence of defendants-respondents.

In November 1974, WIFE joined as a party plaintiff by leave of the court and thereafter HUSBAND and WIFE filed a first amended complaint. In the second cause of action in that amended complaint WIFE alleged that she had suffered damages for loss of consortium which occurred as the result of HUSBAND's injury.

Demurrers to the second cause of action were filed by defendants-respondents on the ground the case is controlled by general maritime law and by long settled authority, no action for loss of consortium may be maintained thereunder. These demurrers were sustained by the trial court with prejudice and without leave to amend.

## Issue

On appeal, plaintiff WIFE contends that recent federal and state decisions support a cause of action for loss of consortium under general maritime law for the wife of an injured longshoreman.

## Discussion

■ *Can the wife of an injured longshoreman recover for loss of consortium caused by negligence of the shipowner or unseaworthiness of the ship under general maritime law?*

The parties to the instant litigation concede, and rightly so, that state courts are required to apply federal maritime law under this factual situation.

In 1963 the issue was presented for the first time in a federal court of appeals in the case of *Igneri* v. *Cie. de Transports ·Oceaniques* (2d Cir. 1963) 323 F.2d 257. The court held that the scheme of remedies, statutory and judicial, for injury to such maritime workers limits recovery to the person directly injured and that the wife cannot recover for loss of consortium.

In deference to stare decisis, we are bound by *Igneri* unless it has been overruled by subsequent federal decisions.

In 1974 the United States Supreme Court in *Sea-Land Services, Inc.* v. *Gaudet* (1974) 414 U.S. 573 [39 L.Ed.2d 9, 94 S.Ct. 806], held that the widow of a longshoreman may maintain an action for the wrongful death of her husband—alleged to have resulted from injuries suffered by him while aboard a vessel in navigable waters—after the decedent recovered damages in his lifetime for his injuries. We quote at length what the court said at pages 584-590:

"Our review of those authorities, and the policies of maritime law, persuade us that, under the maritime wrongful-death remedy, the decedent's dependents may recover damages for their loss of support, services, and society, as well as funeral expenses.

"Recovery for loss of support has been universally recognized, and includes all the financial contributions that the decedent would have made to his dependents had he lived. Similarly, the overwhelming

majority of state wrongful-death acts and courts interpreting the Death on the High Seas Act have permitted recovery for the monetary value of services the decedent provided and would have continued to provide but for his wrongful death. Such services include, for example, the nurture, training, education, and guidance that a child would have received had not the parent been wrongfully killed. Services the decedent performed at home or for his spouse are also compensable.

"Compensation for loss of society, however, presents a closer question. The term 'society' embraces a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection. Unquestionably, the deprivation of these benefits by wrongful death is a grave loss to the decedent's dependents. . . .

"A clear majority of States, on the other hand, have rejected such a narrow view of damages, and, either by express statutory provision or by judicial construction, permit recovery for loss of society. This expansion of damages recoverable under wrongful-death statutes to include loss of society has led one commentator to observe that '[w]hether such damages are classified as "pecuniary," or recognized and allowed as nonpecuniary, the recent trend is unmistakably in favor of permitting such recovery.' Speiser 218. Thus, our decision to permit recovery for loss of society aligns the maritime wrongful-death remedy with a majority of state wrongful-death statutes. But in any event, our decision is compelled if we are to shape the remedy to comport with the humanitarian policy of the maritime law to show 'special solicitude' for those who are injured within its jurisdiction.

"Objection to permitting recovery for loss of society often centers upon the fear that such damages are somewhat speculative and that factfinders will return excessive verdicts. We were not unaware of this objection in *Moragne,* where we said:

> " '[O]ther courts have recognized that calculation of the loss sustained by dependents or by the estate of the deceased, which is required under most present wrongful-death statutes . . . does not present difficulties more insurmountable than assessment of damages for many nonfatal personal injuries.' 398 U.S., at 385.

"For example, juries are often called upon to measure damages for pain and suffering, mental anguish in disfigurement cases, or intentional

infliction of emotional harm. In fact, since the 17th century, juries have assessed damages for loss of consortium—which encompasses loss of society—in civil actions brought by husbands whose wives have been negligently injured. More recently, juries have been asked to measure loss of consortium suffered by wives whose husbands have been negligently harmed. Relying on this history, the Florida Supreme Court recognized as early as 1899 that the damages for loss of society recovered by a wife for the wrongful death of her husband were 'no more fanciful or speculative than the frugality, industry, usefulness, attention and tender solicitude of a wife [all of which a husband might recover at common law in an action for consortium], and the one can be compensated [as easily] by that simple standard of pecuniary loss . . . as the other.' *Florida C. & P. R. Co.* v. *Foxworth,* 41 Fla. 1, 73, 25 So. 338, 348."

In 1975 the United States Court of Appeals in *Skidmore* v. *Grueninger* (5th Cir. 1975) 506 F.2d 716, construed *Sea-Land Services, Inc.* as implicitly recognizing that recovery for loss of consortium[1] should be allowed in maritime wrongful death actions. *Skidmore* involved an action brought by the widower, adult daughter and administrator of the estate of deceased motorboat passenger for the death of the passenger in a collision between the motorboat and a barge. The United States District Court denied recovery for loss of consortium and society and for loss of support. The Court of Appeals held that loss of consortium and loss of society were items of compensable harm in maritime wrongful death actions, stating at pages 727-728: "The District Court, in granting recovery to appellants, denied their claim for loss of society and consortium on the basis of Canal Barge Co. v. Griffith, 5 Cir., 1973, 480 F.2d 11, and their claim for loss of support on the basis of insufficient evidence, or failure of proof. Subsequent to the decision of the lower court and during the pendency of this appeal, the Supreme Court overturned the *Canal Barge* line of cases and ruled that survivors in a maritime wrongful death action may be allowed recovery for loss of

[1]We note the California Supreme Court in *Rodriguez* v. *Bethlehem Steel Corp.,* 12 Cal.3d 382 [115 Cal.Rptr. 765, 525 P.2d 669], at page 405 stated consortium includes conjugal society, comfort, affection and companionship. California Jury Instructions Civil [5th ed.] (BAJI 14.40 [1974 Rev.]), states the measure of damages for loss of consortium includes love, companionship, comfort, affection, society, solace or moral support. In *Sea-Land Services, Inc.* v. *Gaudet, supra,* 414 U.S. at p. 585 [39 L.Ed.2d at p. 21], the court, as noted, said: "The term 'society' embraces a broad range of manual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection." Apparently, there is a distinction without a discernible difference between loss of society and loss of consortium.

support, services, society and funeral expenses. Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 584, 94 S.Ct. 806, 814, 39 L.Ed.2d 9 (1974). In *Sea-Land Services* the Supreme Court, without specific mention, implicitly recognized that recovery for loss of consortium should be allowed in maritime wrongful death actions as well. 414 U.S. at 584-590, 94 S.Ct. at 814-817, 39 L.Ed.2d at 20. Following the Supreme Court's directive that the maritime wrongful death remedy should reflect the 'humanitarian policy of the maritime law to show "special solicitude" for those who are injured within its jurisdiction,' 414 U.S. at 588, 94 S.Ct. at 816, 39 L.Ed.2d at 22, we hold that loss of consortium is a compensable harm."

The 1963 case of *Igneri* prefaced its holding that the spouse of a negligently injured longshoreman could not recover for loss of consortium in the absence of two conditions. The court said at page 267: "If there were evidence that maritime law generally recognized a claim for negligent injury to such an intangible right, or if the common law clearly authorized a wife's recovery, the gravitational pull of such concepts with respect to the wife of a longshoreman might be stronger than that of the analogy to the statute denying such recovery to a seaman's wife. But, with neither of these conditions realized, our duty to avoid capricious differences in treatment between similarly situated persons forbids our fashioning a rule that would place the spouse of a harbor-worker in a different, and better, position than the spouse of a seaman."

With the passage of time since *Igneri* was handed down, the gravitational pull both in maritime law (as reflected in *Sea-Land Services* and *Skidmore*) and the common law trend, has apparently now become stronger than the analogy denying such recovery to a seaman's wife relied on in *Igneri.*

In 1974 the California Supreme Court in *Rodriguez* v. *Bethlehem Steel Corp., supra,* 12 Cal.3d 382, established that each spouse has a cause of action for loss of consortium caused by a negligent or intentional injury to the other by a third party. The court pointed out that in recent legal history the states that recognized the wife's right to recover for loss of consortium increased from 5 to at least 31. The court concluded at pages 392-393: "In these circumstances we may fairly conclude that the precedential foundation of *Deshotel* has been not only undermined but destroyed. In its place a new common law rule has arisen, granting either spouse the right to recover for loss of consortium caused by negligent injury to the other spouse. Accordingly, to adopt that rule in California at this time would not constitute, as the court feared in *Deshotel* (50

Cal.2d at p. 667), an 'extension' of common law liability, but rather a *recognition* of that liability as it is currently understood by the large preponderance of our sister states and a consensus of distinguished legal scholars." (Original italics.)

Accordingly, since we can perceive no logical, sound or reasonable basis to differentiate between the case where the husband is killed, as contrasted to injured, in respect to the wife's entitlement to recover for loss of consortium, we conclude that *Igneri* has been overruled by *Sea-Land Services* as construed by *Skidmore*.

## DISPOSITION

Judgment of dismissal and the sustaining of the demurrer without leave to amend is reversed. Each party shall bear his own costs on appeal.

Lillie, Acting P. J., and Thompson, J., concurred.