**In re PARIS AIR CRASH OF MARCH 3, 1974.**

**MDL No. 172.**

United States District Court, C. D. California.

Oct. 1, 1976.

F. Lee Bailey, Aaron J. Broder by Seymour Madow, New York City, Butler, Jefferson & Fry by James G. Butler, James M. Jefferson, Jr., Robert P. Fry, Michael A. K. Dan, Moses Lebovits, Chase, Rotchford, Drukker & Bogust by Henry J. Bogust, Los Angeles, Cal., Goldfarb & Singer, Washington, D. C., Green, Royce & Seaman by Irving H. Green, Beverly Hills, Cal., Hodge & Hodges by John R. Skoog, Horgan & Robinson by Mark P. Robinson, Los Angeles, Cal., Kreindler & Kreindler by Lee S. Kreindler, Marc S. Moller, Melvin I. Friedman, New York City, Krutch, Lindell, Donnelly, Dempcy, Lageschulte & Judkins, P. S. by Richard F. Krutch, Vernon T. Judkins, Seattle, Wash., Lewis, Wilson, Cowles, Lewis & Jones, Ltd. by Richard H. Jones, Arlington, Va., McGrail & Nordlund by Joseph V. McGrail, Alexandria, Va., Magana & Cathcart by Daniel C. Cathcart, James J. McCarthy, Morgan, Wenzel & McNicholas by Wm. Marshall Morgan, David H. Noble, Los Angeles, Cal., Paul, Weiss, Rifkind, Wharton & Garrison by Joseph S. Iseman, John J. O'Neil, Jr., New York City, Shahin & Wawro by James Wawro, Los Angeles, Cal., Sherman & Schwartz, Ins. by Arthur Sherman, Beverly Hills, Cal., Speiser & Krause by Stuart M. Speiser, Charles F. Krause, New York City, Speiser, Krause & Madole by Donald W. Madole, A. George Glasco, Juanita M. Madole, Washington, D. C., Walkup, Downing & Sterns by Gerald C. Sterns, Thomas G. Smith, San Francisco, Cal., Walsh & Levine by Laurence W. Levine, New York City, for plaintiffs.

William D. Keller, U. S. Atty. by James R. Dooley, Asst. U. S. Atty., Los Angeles, Cal., George E. Farrell, John G. Laughlin, Herbert L. Lyons, Sp. Attys., Tort Claims Section, Aviation Unit, Civ. Div., Dept. of Justice, Washington, D. C., Neil R. Eisner, Office of Gen. Counsel, Federal Aviation Administration, Washington, D. C., for United States.

Kirtland & Packard by Robert C. Packard, Jacques E. Soiret, Los Angeles, Cal., Mendes & Mount by James M. FitzSimons, Joseph J. Asselta, New York City, Tuttle & Taylor by William A. Norris, Joseph A. Austin, Charles B. Rosenberg, Ronald C. Peterson, Belcher, Henzie & Biegenzahn by Leo J. Biegenzahn, Los Angeles, Cal., for McDonnell Douglas.

Overton Lyman & Prince by Fred S. Lack, Jr., Brenton F. Goodrich, Gregory A. Long, Ernest E. Johnson, Los Angeles, Cal., for General Dynamics.

Adams, Duque & Hazeltine by Thomas F. Call, Los Angeles, Cal., Condon & Forsyth by George N. Tompkins, Jr., Desmond T. Barry, Jr., Frank A. Silane, New York City, Latham & Watkins by Philip F. Belleville, A. Victor Antola, Thomas L. Harnsberger, Los Angeles, Cal., Shaw, Pittman, Potts & Trowbridge by Phillip D. Bostwick, Jay H. Bernstein, Washington, D. C., for Turkish Airlines, Inc.

## MEMORANDUM OPINION RE JURY INSTRUCTIONS ON ELEMENTS OF DAMAGE FOR WRONGFUL DEATH [1]

PEIRSON M. HALL, Senior District Judge.

Of the 337 deaths before the Court arising out of the Paris air crash of March 3, 1974, only two are ready for and going to trial, trailing one another: (1) The *Kween* case, where the father and mother (aged 30) were killed, leaving two small girls (aged about 2 and 4) and paternal grandparents, who were claimed to be dependent; (2) the *Safran* case, where the father was killed, leaving the widow and four minor children, aged 6 to 16 years.

---

1. This memorandum was prepared a year and a half ago, but it got lost in the deluge of papers involving about 700 decedents. It has been brought up to date and should be filed and published.

In conference with all counsel, the instructions were settled by the Court (not without disagreement). This memorandum deals with *Kween* Instruction 24 and *Safran* Instruction 24. Copies of each are appended.

On August 1, 1975, this Court wrote an opinion holding the law of California applicable to both liability and damages in this case. (D.C., 399 F.Supp. 732.)

Some history of the law will be helpful.

In 1862, the law of California originally provided in C.C.P. § 377 as to death cases:

"In every such action the jury may give such damages, *pecuniary* or *exemplary*, as, under all the circumstances of the case, may to them seem just." (Emphasis added.)

In 1874, the statute was amended by striking out the words "pecuniary and exemplary." The portion of the section dealing with the measure of damages in a death case then, and ever since, reads as follows:

"[S]uch damages may be given as under all the circumstances of the case, may be just."

Search through the various law libraries, including the legislative library in Sacramento, reveals no committee report or legislative expression of any kind, except the statute, and no papers or documents of any kind which discuss the reason for the change.

In just simply reading the statute, one would logically conclude that the words "pecuniary or exemplary" were surplus and that both remained because the jury must give such damages as are "just."

But in 1890 the Supreme Court held in *Munro v. Pacific Coast Dredging Co.*, 84 Cal. 515, 24 P. 303, that "pecuniary" damages, but not exemplary damages, could be allowed in a death case. In that case, the following instruction was requested by the defendant:

" 'The jury have no right to give exemplary or vindictive damages, but are confined to the actual pecuniary damage suffered by the estate of [the] deceased.'

"The court refused to give this instruction as requested, but modified the same to read as follows:

" 'The jury have no right to give exemplary or vindictive damages, but are confined to the actual pecuniary damage suffered by the estate of . . [the] deceased; but in this connection I charge you that the law also permits a jury to make allowance for such a sum as may seem fair and just for sorrow, suffering, and mental anguish occasioned to her by the death.'

"To the refusal of the court to give the instruction as requested, and in giving the modified instruction, the defendant excepted.

"In refusing the request as made the court committed no error of which the defendant can complain; but, in giving it as modified, it did fall into an error . . . . . . ."

It is noted that the disapproved instruction allowed for "sorrow, suffering, and mental anguish."

Why the Court chose to exclude "exemplary damages" as not to be just, but included pecuniary damages, is not understandable, because both "pecuniary" and "exemplary" were stricken by the amendment; and the Court approved that there be no instruction on contributory negligence (then the law) because it said that no degree of care will excuse a person, where death was caused by an explosion in a thickly populated portion of the city, from responsibility for it. 84 Cal. at 519, 24 P. 303.

That line of decision, except on contributory negligence, was followed in California ever since until 1974, when the Supreme Court decided *Rodriguez v. Bethlehem Steel Corp.*, 12 Cal.3d 382, 115 Cal.Rptr. 765, 525 P.2d 669, where it restored the right to receive damages for loss of consortium, which includes "not only the loss of support or services, it also embraces such elements as love, companionship, affection, society, sexual relations, solace and more." 12 Cal.3d at 405, 115 Cal.Rptr. at 780, 525 P.2d

at 684. The Court further stated, "Nor is the wife's personal loss limited to her sexual rights. As we recognized in *Deshotel* (50 Cal.2d at p. 665, 328 P.2d at p. 449), consortium includes 'conjugal society, comfort, affection, and companionship.'"

But we are not here concerned with exemplary or punitive damages, only with "pecuniary loss."

But I find no case or California statute definition for "pecuniary," except its use in place of "monetary value" of the loss of whatever they are talking about.

While Black has several ways of stating the meaning of "pecuniary" (as do all law dictionaries), the clearest one is:

"In the strictest sense [pecuniary means] money. This has become the prevalent and almost the exclusive meaning of the word."

And while some highly sophisticated reasoning might say that "compensatory" and "pecuniary," when referring to a loss, do not mean the same thing, nonetheless, the common-sense phrase is "compensatory damages for the pecuniary loss."

While no California case can be found which legally defines "pecuniary," the United States Supreme Court, in *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), has given it a meaning which can be applied to the things which are compensable losses in death cases, as will be shortly mentioned.

In *Skidmore v. Grueninger*, 506 F.2d 716, at page 728 (5th. Cir. 1975), the Court said:

". . . In *Sea-Land Services* the Supreme Court, without specific mention, implicitly recognized that recovery for loss of consortium should be allowed in maritime wrongful death actions as well. 414 U.S. at 584–590, 94 S.Ct. at 814–817, 39 L.Ed.2d at 20."

Lest someone should say that *Rodriguez, Sea-Land*, and *Skidmore* only apply to maritime accidents and that the principles they announce did not apply to deaths other than maritime, it is to be noted that in the *Sea-Land* case the Court used as one of its principal authorities a case where a death occurred in a railroad accident, viz., *Florida C. & P. R. Co. v. Foxworth*, 41 Fla. 1, 25 So. 338.

The Court said in the *Sea-Land* case, 414 U.S. at 589–90, 94 S.Ct. at 817:

"[S]ince the 17th century, juries have assessed damages for loss of consortium—which encompasses loss of society—in civil actions brought by husbands whose wives have been negligently injured. More recently, juries have been asked to measure loss of consortium suffered by wives whose husbands have been negligently harmed. Relying on this history, the Florida Supreme Court recognized as early as 1899 that the damages for loss of society recovered by a wife for the wrongful death of her husband were 'no more fanciful or speculative than the frugality, industry, usefulness, attention, and tender solicitude of a wife [all of which a husband might recover at common law in an action for consortium], and the one can be compensated [as easily] by that simple standard of pecuniary loss . . . as the other.' *Florida C. & P. R. Co. v. Foxworth*, 41 Fla. 1, 73, 25 So. 338, 348."

This language was adopted almost *in haec verba* in the recent (1975) California case of *Pesce v. Summa Corp.*, 54 Cal. App.3d 86, 90, 126 Cal.Rptr. 451.

In the *Sea-Land* case, the Court enlarged upon the definition of society in the following language (414 U.S. at 585, 94 S.Ct. at 815):

"Compensation for loss of society, however, presents a closer question. The term 'society' embraces a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection. Unquestionably, the deprivation of these benefits by wrongful death is a grave loss to the decedent's dependents."

The Court pointed out that the previous construction of the words "pecuniary loss," under the definition contained in section 762, Title 46, of the Death on the High Seas

Act, excluded recovery for the loss of society.

In *Sea-Land*, at pp. 587–588, 94 S.Ct. at p. 816, the Court put its finger on the underlying logic for enlarging the definition of "pecuniary loss":

"Thus, our decision to permit recovery for loss of society aligns the maritime wrongful-death remedy with a majority of state wrongful-death statutes. But in any event, *our decision is compelled if we are to shape the remedy to comport with the humanitarian policy of the maritime law to show 'special solicitude' for those who are injured within its jurisdiction.*" (Emphasis added.)

Thus, the reason for the enlargement of the remedy in *Moragne v. States Marine Lines*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), and in *Sea-Land* was the "special solicitude" which Congress has shown for people who are "seafaring" and injured within the jurisdiction of admiralty, which includes, of course, passengers on ships for hire.

It takes only one reading of the Federal Aviation Act of 1958, especially the chapter entitled "Safety," which contains at least 30 different statements specifically mentioning different duties involving safety, to show that Congress has just as great, if not greater, "special solicitude" for those who, whether passengers or crew, are virtually helpless and at the mercy of the makers of the plane and its operators. When the door is locked and they are strapped in their seats, they are more helpless to help themselves than in any other form of transportation.

But the chapter on safety isn't the only thing that shows the "special concern" of Congress for the airplane occupant. The detail of the Act and the six volumes of regulations, now grown to 60, including the current year, regulate everything that goes into making every plane that flies, down even to the length and thread of every screw. The federal government regulates the "roads of the air"—their height and width; builds innumerable devices on the landscape; constructs television and other electronic means of direction and communication; and, finally, not one plane can take off, fly, or land without the permission of the Government. Thus, the "special concern" of Congress for those who do or must fly in planes far surpasses any "special concern" shown for those who use or travel aboard ships. And it should be so, because what good would a lifeboat, a raft, or an inflated jacket or a piece of wreckage be in an air crash—as such things are used in shipwrecks to keep afloat or await the help of a nearby vessel; and from whence, and how, would aid come from a nearby plane— such as is done so often with ships? Or how could helicopters help when a plane is crashing at hundreds of miles an hour into a mountain on the ground? All these aids are available in a shipwreck; none, in an airplane crash.

No person in the purchase of anything or of any kind of transportation is as utterly helpless to protect himself as a passenger on an airplane. What can they see or inspect? And what would they know about it if they did?

Lastly, BAJI [2] has adopted an instruction allowing damages for loss of consortium.

### APPENDIX A

### INSTRUCTION NO. 24

In determining whether or not a claimant was a dependent and in determining the pecuniary loss, if any, suffered as a result of the death of a decedent, you may consider not only the financial support which each claimant would have received from each decedent except for his or her death, but also the pecuniary value of the right, if any, of each one to receive support, services, and society. Recovery for loss of support includes all the financial contributions that the decedents would have made to each dependent had the decedents lived. The monetary value of services means the

---

2. California Book of Approved Jury Instructions (Civil), 1974 Revision, edited by a panel of California judges.

amount of money the decedents provided and would have continued to provide but for his or her wrongful death. Such services include, for example, the nurture, training, education, and guidance that a child would have received had not the parent been killed. The term "society" embraces a broad range of mutual benefits each dependent would have received from the continued life and existence of the decedents, including love, affection, care, attention, companionship, comfort, and protection.

In weighing these matters, you may consider the age of the deceased and of each claimant, the state of health and the physical condition of the deceased and of each claimant as it existed at the time of the death and immediately prior thereto, as well as their prospective health; their station in life; their respective expectancies of life as shown by the evidence; the disposition of each decedent, whether it was kindly, affectionate, or otherwise; the habits of each decedent relating to industry, hard work, and thrift; their business ability; whether or not he or she contributed to the support of each claimant or any of them; the earning capacity of the deceased; whether or not the conduct of each towards each claimant showed that the decedents under consideration showed and would continue to show, had he or she lived, love, affection, care, comfort, companionship, and protection to the claimants, singularly or as a whole; and such other facts shown by the evidence as throw light upon the pecuniary value of the above which each claimant reasonably might have expected to receive from each decedent had he or she lived. *Pesce v. Summa Corporation*, 54 Cal.App.3d 86, 126 Cal.Rptr. 451 (1975); *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974).

## APPENDIX B

(Where wife or husband is killed)

### INSTRUCTION NO. 24

The law provides that in every action such as this one, such damages, if any, may be given as under all the circumstances of the case may be just.

The elements constituting such damages, if any, may be several, which I will outline to you. As such elements of damage can only be measured in money, they are collectively termed "compensatory" or, more often, "pecuniary" damages.

The elements that go to make up pecuniary damages are those things which the decedent did supply and would have supplied to each of the heirs had he lived. Such elements come under the following headings:

1. Loss of Support. The loss of support includes all the financial contributions, whether in money or other material things of value, which the decedent would have made to each heir had the decedent lived. The right of an heir to receive support exists whether or not he did in fact receive it. The right to receive such support is not terminated by the attainment of majority, but is to be determined by the jury from the evidence, in your judgment as reasonable men and women, as to what in all probability the decedent would have done in continuing support after the attainment of majority by the heir.

2. Loss of Other Benefits. The loss of other benefits includes the loss of intangible things, such as services which the decedent would have performed for each of the heirs had the decedent lived. Such services include, for example, the nurture, training, education, and guidance that each heir would have received had not Milton Safran been killed. In considering such loss, if any, you should consider all the services which are susceptible of being furnished by others to the heirs and which the preponderance of the evidence shows they probably would have received from the decedent had he lived. The pecuniary value for such other benefits is the dollar value of services as nearly similar as possible to those which would have been furnished by the decedent had he lived if the heirs were to obtain such services from others and pay the reasonable value therefor. The heirs are entitled to

recover the reasonable value of such services whether or not they actually hire such services.

3. Loss of Society. The loss of society embraces a broad range of mutual benefits each family member receives from the continued life and existence of the decedent, including love, affection, care, attention, companionship, comfort, and protection.

4. Funeral Expenses. Such reasonable sum for funeral expenses as are consistent with the station in life of the decedent.

5. Loss of Personal Belongings. The plaintiffs are entitled to recover the value of personal belongings, if any, such as baggage, jewelry, personal effects, and the like, which were lost by the decedent when he was killed.

6. Loss of Consortium. In considering the loss to June Gottlieb Safran, the surviving widow of Milton Safran, you may consider what in law is known as the loss of "consortium." Consortium means the conjugal relations between husband and wife and the right of each to the company, affection, solicitude, society, and aid in every relation that exists or occurs between a man and his wife in the normal and most intimate of matrimonial relations, including sexual relations, but does not include loss of society or the things capable of being purchased under paragraph 3 hereof.

In weighing these matters, you may consider: the age of the deceased and of each heir; the state of health and the physical condition of the deceased and of each heir as it existed at the time of the death and immediately prior thereto, as well as their prospective health; their station in life; their respective expectancies of life as shown by the evidence; the disposition of the decedent Safran, whether it was kindly, affectionate, or otherwise; his habits relating to industry, hard work, and thrift; his business ability; the earning capacity of the deceased; and all such other facts shown by the evidence, under these instructions, as throw light upon the pecuniary value of the above which each heir might have expected to receive from the decedent had he lived, in your judgment as reasonable men and women.

BAJI 14.40 (1974 Revision). *Rodriguez v. Bethlehem Steel Corp.*, 12 Cal.3d 382, 115 Cal.Rptr. 765, 525 P.2d 669 (1974); *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974); *Skidmore v. Grueninger*, 506 F.2d 716 (5th Cir. 1975); *Pesce v. Summa Corporation*, 56 Cal.App. 86, 126 Cal.Rptr. 451 (1975).